UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEFFREY R. FROEMEL,[1]

                Plaintiff,

v.                                                  Case No. 25-cv-88-pp

WARDEN MILLER, *et al.*,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Plaintiff Jeffrey R. Froemel, who is incarcerated at Racine Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants provided him with inadequate medical treatment. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without

---

[1] The case docket lists the plaintiff's first name as "Jeffery," but the plaintiff and the prison use the spelling "Jeffrey." See Dkt. No. 1 at 1; Dkt. No. 1-1 at 2; https://appsdoc.wi.gov/lop/home/home (DOC #156494). The court will use the latter spelling and will update the docket accordingly.

prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On January 24, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $16.19. Dkt. No. 5. The court received that fee on February 20, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include

2

"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The complaint names as defendants Warden Miller and Health Services Unit (HSU) staff at Racine. Dkt. No. 1 at 1. The plaintiff later lists the HSU staff as Devin Crawford, McCullen, Tina and an unnamed (John Doe) "African American who works weekend's [*sic*]." Id. at 2–3. The plaintiff alleges that the

defendants endangered his life and violated his rights after he told them that he was experiencing severe chest pain. Id. at 2.

The plaintiff details the "nightmare" that he says began on July 5, 2024. Id. at 3. He alleges that he went to the HSU about chest pain that he was experiencing from exerting himself at his job in the kitchen. Id. He says that he told Nurse Crawford that his left arm hurt, he was nauseated, he had difficulty breathing and had frequent headaches. Id. He told Crawford that he had "had a cardiac arrest" at Waupun Correctional Institution in 2019, and that medical staff there gave him nitroglycerin tablets. Id. Crawford reviewed the plaintiff's medical file but did not see anything about the past incident. Id. The plaintiff insists that Crawford was lying, but that Crawford took the plaintiff's vitals and ran an EKG. Id. at 3–4. The plaintiff says that his blood pressure was high, and an unidentified doctor said that the EKG "didn't reveal [the plaintiff] was haveing [*sic*] a heart attack." Id. at 4. The plaintiff maintains that he was having a heart attack. Id. Crawford told the plaintiff that he "must be to[o] stressed out at work," prescribed him acetaminophen and concluded the appointment. Id.

The plaintiff alleges that he went back to the HSU on July 7, 2024 with the same symptoms. Id. at 5. He says that he saw the John Doe nurse and told him about his symptoms and medical history. Id. He also told the Doe nurse that he "quit coffee, quit salt" and drinks at least eight pints of water per day. Id. The Doe nurse had the plaintiff undergo another EKG but then could not find the results. Id. The nurse diagnosed the plaintiff with heartburn and

4

Case 2:25-cv-00088-PP   Filed 05/14/25   Page 4 of 15   Document 11

prescribed him antacids and anti-gas medication. Id. The plaintiff says he consumed three-quarters of the antacids by the next morning. Id. He says that the Doe nurse did not listen to him and did not properly diagnose his heart issues. Id. at 5.

The plaintiff alleges that the next day—July 8, 2024—he returned to the HSU, reporting the same symptoms. Id. at 7. He saw Nurse McCullen, "who jumped all over [him] about not following how the Health Service Request's [*sic*] are reviewed." Id. He says that McCullen told him to fill out a request before coming to the HSU so that medical staff could determine whether they needed to see him. Id. McCullen nonetheless took the plaintiff's blood pressure, which remained high, and ran another EKG, which "didn't reveal nothing again." Id. The plaintiff told McCullen about his heart issues at Waupun and asked for a nitroglycerin tablet, but McCullen continued to tell him that he did not have heart issues. Id.

The plaintiff says that after the appointment with McCullen, he was sitting in a hallway while an unnamed nurse and provider were "trying to decide what they should do." Id. at 6. He says that after about five minutes, the provider suggested sending the plaintiff "to the cardiac hospital . . . to cross the Tees' and dot the eye's [*sic*]." Id. Racine staff sent the plaintiff to a hospital, where he says he "was rushed to surgery" and had three stents placed. Id.

The plaintiff alleges that on July 13, 2024, he was back at Racine and "was forced to go back to work." Id. at 8. He says he was still suffering shortness of breath, chest pain and low energy. Id. A sergeant (not a defendant)

5

Case 2:25-cv-00088-PP   Filed 05/14/25   Page 5 of 15   Document 11

told the plaintiff that he did not have a no-work restriction and should have been back at work two days earlier, immediately after the plaintiff returned from the hospital. Id. The plaintiff says that he began to work but experienced chest pain and nausea, and after an hour he had no energy or strength. Id. He says that he had to argue with the sergeant to go to the HSU, where he saw Nurse Tina. Id. at 8–9. He says that he had seen Tina the previous day, and that she was disrespectful and mean and yelled at him for returning to the HSU. Id. The plaintiff tried to explain his symptoms, but Tina told him that his EKG results the previous day showed that he was "in perfect health." Id. The two began arguing about the plaintiff's EKG results from July 5 through 12, until the plaintiff says he "g[a]ve up trying to get any kind of health help." Id. at 9–10.

The plaintiff instead asked for a no-work restriction, which he says was included with his discharge papers from the hospital. Id. at 10. He says that Nurse Tina eventually looked at his discharge papers and reviewed his restrictions. Id. at 10–11. He says that he asked her to call the hospital, but that she refused and told him that "the doctor and staff" had reviewed his file and saw no reason to contact a specialist. Id. at 11. The plaintiff does not say whether he received the no-work restriction he requested. Id.

The plaintiff asserts that HSU staff "are secretly trying to kill [him] because [he] know[s] that they covered up the three HSU visit's [*sic*]" from July 5, 7 and 8, 2024. Id. The plaintiff says that the HSU failed to report his heart attack before sending him to the hospital. Id. He seeks $50,000 in damages for

6

each of the six days that he says he suffered chest pains and other symptoms, for a total of $300,000. Id. at 12.

C. Analysis

The plaintiff alleges that nurses in the HSU provided him inadequate medical treatment for his heart issues. The court analyzes these allegations under the Eighth Amendment. Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (citing Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*). "The standard of deliberate indifference 'requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk.'" Stewart v. Wexford Health Sources, Inc., 14 F.4th 757, 763 (7th Cir. 2021) (quoting Huber v. Anderson, 909 F.3d 201, 208 (7th Cir. 2018)).

The plaintiff alleges that he has a history of heart issues and was suffering heart attacks in July 2024, which eventually led to him receiving stents at a hospital. The court finds that these allegations satisfy the objective component of an Eighth Amendment claim. See, *e.g.*, Mathison v. Moats, 812

7
Case 2:25-cv-00088-PP   Filed 05/14/25   Page 7 of 15   Document 11

F.3d 594, 598 (7th Cir. 2016) (noting that a "heart attack is a life-endangering event").

The question is whether the complaint's allegations satisfy the subjective component for each defendant. The plaintiff says that he first saw Nurse Crawford for his symptoms. He told Crawford about his history of heart problems, but Crawford said he did not see any information in the plaintiff's medical file about past heart issues. The plaintiff insists that Crawford was lying about what the medical file showed. Crawford nonetheless ran tests on the plaintiff, taking his vitals and running an EKG. Although the plaintiff's blood pressure was high, the EKG did not show the plaintiff was having a heart attack. Crawford suggested that the plaintiff was stressed at work and provided him over-the-counter pain medication.

Although the plaintiff was dissatisfied with his treatment from Crawford, his allegations do not suggest that Crawford was deliberately indifferent. Even if the plaintiff is right that Crawford lied about his medical file, his allegations do not suggest that Crawford disregarded his medical complaint or was indifferent to his concerns. The plaintiff alleges that after reviewing his medical history, Crawford took the plaintiff's blood pressure and ran an EKG test. Those results did not suggest the plaintiff was having a heart attack, so Crawford did not take immediate action. The plaintiff later proved to have an issue requiring hospitalization. That could suggest that Crawford's misdiagnosis of the plaintiff's symptoms or test results was the result of negligence or medical malpractice, but neither of those violates the Eighth Amendment. See Whiting v. Wexford

Health Sources, Inc., 839 F.3d 658, 662 (7th Cir. 2016) ("[W]ithout more, a mistake in professional judgment cannot be deliberate indifference."); Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996) ("[A] defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation."). The complaint does not state a claim against Crawford.

The plaintiff next saw the John Doe nurse, who performed another EKG on the plaintiff but seemingly could not find the results of that test. He diagnosed the plaintiff with heartburn and provided him antacids and anti-gas medication. Although this is a closer call, the court again concludes that these allegations support only a claim of negligence or medical malpractice. Nothing in the plaintiff's allegations against the Doe nurse suggest that the nurse disregarded the plaintiff's complaints or acted recklessly to a risk to his health. The nurse's failure "to correctly diagnose [the plaintiff's] condition is evidence of negligence, not deliberate [in]difference." Grant v. Heidorn, 802 F. App'x 200, 205 (7th Cir. 2020) (citing Cesal v. Moats, 851 F.3d 714, 724 (7th Cir. 2017)).

The same goes for the plaintiff's allegations against Nurse McCullen. The plaintiff says that he saw McCullen on July 8, and that McCullen became angry with the plaintiff for not following proper procedure. But McCullen still took the plaintiff's vitals and ran another EKG, which again did not show that the plaintiff had an urgent heart issue. These results may have been incorrect, or McCullen may have incorrectly interpreted them. But again, that would be evidence of negligence, medical malpractice or a simple misdiagnosis. None of

those is sufficient to state an Eighth Amendment claim. See Stockton v. Milwaukee County, 44 F.4th 605, 616 (7th Cir. 2022) ("Mistakes in medical judgment, even negligence, are insufficient to support deliberate indifference.").

The plaintiff saw Nurse Tina after he returned from the hospital. He says that Tina was disrespectful and mean to him, and that the two argued about the plaintiff's symptoms. The plaintiff had seen Tina the previous day, and his EKG results then showed no abnormalities. The plaintiff says he was able to convince Tina to review his discharge papers from the hospital to review his restrictions. He does not say whether Tina provided him a no-work restriction, but in his request for relief he has not asked for that restriction. These allegations suggest only that Tina was difficult or disrespectful rather than indifferent to the plaintiff's medical concerns. Disrespectful and even mean language may be unprofessional, but it does not violate the Eighth Amendment. See Lisle v. Welborn, 933 F.3d 705, 719 (7th Cir. 2019) (citing Beal v. Foster, 803 F.3d 356, 357–58 (7th Cir. 2015)) (explaining that prison staff's use of even "[r]epugnant words . . . will seldom rise to an Eighth Amendment violation" because "[r]elationships between prisoners and prison staff are not always marked by genteel language and good manners").

The plaintiff alleges that other unspecified "HSU staff" violated his rights. But to be liable under §1983, a defendant must be personally responsible for the violation of a constitutional right. See Taylor v. Ways, 999 F.3d 478, 493 (7th Cir. 2021). The plaintiff cannot sue the entire HSU staff, and that label does not provide any information to identify specific persons who were

10
Case 2:25-cv-00088-PP    Filed 05/14/25    Page 10 of 15    Document 11

personally responsible for violating the plaintiff's rights. See Cash v. Marion County Jail, 211 F. App'x 486, 488 (7th Cir. 2006) (affirming dismissal of suit naming jail "staff" as defendants); Gray v. Weber, 244 F. App'x 753, 754 (8th Cir. 2007) (affirming dismissal of §1983 complaint against defendants identified "only collectively as 'medical staff'").

The plaintiff also names Warden Miller as a defendant, but the complaint contains no allegations explaining how the warden was personally responsible for the plaintiff's medical treatment. Perhaps the plaintiff seeks to hold Warden Miller responsible because he is the warden at Racine. But supervisors are responsible only for their own conduct, not the conduct of their subordinates. See Iqbal, 556 U.S. at 676; Day v. Subsecretario del Sistema Penitenciario Federal, 838 F. App'x 192, 193 (7th Cir. 2021). A supervisory official may be held responsible for others' conduct only if he was aware of the misconduct and authorized, approved or condoned it. See Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001). The complaint does not allege that Warden Miller denied the plaintiff treatment, or was aware that he was being given inadequate treatment and allowed it to occur. The plaintiff has not stated a claim against Warden Miller.

The court concludes that the complaint does not state an Eighth Amendment claim against any named defendants. But the court finds that it is possible that, if the plaintiff were to file an amended complaint and include additional factual details, the plaintiff might be able to state a claim against one or more of the nurses he saw from July 5 to 13, 2024. The court will give

11

Case 2:25-cv-00088-PP    Filed 05/14/25    Page 11 of 15    Document 11

him an opportunity to amend his complaint to correct the deficiencies the court had identified and to better explain the claims in the original complaint.

When writing his amended complaint, the plaintiff should give the court enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form. The plaintiff must use this form to prepare his amended complaint. He must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He instead must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claims.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive it* by the end of the day on **June 13, 2025**. If the court receives an amended complaint by the end of the day on June 13, 2025, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by day's end on June 13, 2025, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$333.81** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the

transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Racine Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 14th day of May, 2025.

                                             **BY THE COURT:**

                                             _____
                                             **HON. PAMELA PEPPER**
                                             **Chief United States District Judge**